EVELYN DICKINSON (afterwards EDWARD J. MCINTYRE, administrator,) *vs.* CITY OF BOSTON.

Suffolk.    January 17, 1905. — September 7, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Witness*, Cross-examination.    *Evidence*, Declarations of deceased persons.    *Boston.* *Municipal Corporations.*

In an action for personal injuries prosecuted after the death of the plaintiff by the administrator of her estate, to recover at common law for the suffering of the intestate from the time of the accident to the time of her death, where the defendant contends that the intestate during this period was suffering and finally died from pulmonary tuberculosis, it is within the discretion of the presiding judge to exclude on the cross-examination of the mother of the intestate, a witness for the plaintiff, questions put for the purpose of eliciting from her a statement that others of her children had died from pulmonary tuberculosis, especially where the substance of the evidence excluded afterwards is admitted in another form.

In an action against a city, begun as an action for injuries from a defect in a highway, where the plaintiff has died, and the action is prosecuted by her administrator, the declarations of the intestate, narrating the circumstances under which the accident occurred, are none the less admissible under R. L. c. 175, § 66, because they were made after the notice required by R. L. c. 51, § 20, had been given to the city, if they were made before the date of the writ.

On an exception to the admission by a presiding judge of the declarations of a deceased person under R. L. c. 175, § 66, if the bill of exceptions does not state that the judge failed to make inquiry to ascertain the good faith of the declarant before admitting the declarations, such judicial action and a preliminary finding of the good faith of the declarant will be inferred from the admission of the evidence.

Under Prov. St. 1773–74, c. 12, confirmed by St. 1796, c. 69, when Boston was a town, and by St. 1825, c. 3, after it became a city, that city was authorized, but was not required, to maintain lamps to light its streets, and to enact proper ordinances providing for the punishment of persons breaking or damaging the lamps.

No general statutory duty is imposed on cities or towns in this Commonwealth to light their streets for any purpose, and if a city lights its streets as a matter of convenience and safety for those having occasion to use them at night, and by

an ordinance directs its superintendent of lamps to keep and maintain all lamp posts in repair, the superintendent of lamps in the performance of this duty becomes the servant of the city for whose negligence in the maintenance of the posts it is responsible.

BRALEY, J. This is an action of tort to recover damages for injuries suffered by the plaintiff's intestate, caused by the fall of a defective lamp post owned by the defendant. Originally the deceased sought to sustain the action under R. L. c. 51, § 18, for injuries received as a traveller upon the highway. But if the lamp post which fell stood in a public way, at the time of the accident she was on her own premises, and this statutory provision was inapplicable. Upon her death, the plaintiff, as administratrix, being admitted to prosecute the suit, by an amendment duly allowed declared in tort at common law for the alleged negligence of the defendant in not keeping and maintaining the lamp post in repair, and allowing it to become defective and unsafe. The plaintiff having obtained a verdict in the Superior Court, the defendant brings the case here on exceptions to the exclusion and admission of certain evidence, and to a refusal to rule that upon all the evidence the action could not be maintained.

No argument has been advanced at the bar, nor is found in the defendant's brief, that if the action could be maintained there was no evidence for the jury of its negligence, or that the deceased was not in the exercise of due care. This leaves for our consideration such matters only as were argued, or appear in the briefs. Before taking up the principal question of liability, the correctness of the rulings relating to evidence may be considered.

The cause of action was for the conscious suffering of the plaintiff's intestate from the time of the accident to her death, and evidence which had a tendency to prove that during this period she was suffering and finally died from an intercurrent disease was admissible. But the attempt of the defendant, for this purpose to elicit on cross-examination from the mother of the deceased, who was a witness for the plaintiff, that others of her children had died from pulmonary tuberculosis, and hence there was a presumption that her daughter also had died from this disease, well may have been deemed in the discretion

of the presiding judge as too remote to be of any probative value, and its exclusion affords no just ground of exception. *Jennings* v. *Rooney,* 183 Mass. 577. *Perkins* v. *Rice,* 187 Mass. 28.

Furthermore, whatever benefit might have been derived from an answer to the question later was obtained by the defendant when from one of its medical witnesses uncontroverted evidence of the presence of this disease in the family, and under such circumstances that if infectious the deceased might have contracted it, was admitted. *Morrison* v. *Lawrence,* 186 Mass. 456.

Under an objection, but without an exception being taken at the time, though subsequently allowed as an exception of the defendant, a witness for the plaintiff, who had acted as counsel for her intestate, was permitted to give evidence of declarations she had made to him before the commencement of the action, whereby she fully narrated the circumstances under which the accident occurred.

It now is urged that as this conversation was held after a notice under R. L. c. 51, § 20, had been served upon the city it is not brought within the provisions of the St. 1898, c. 535, now R. L. c. 175, § 66, because serving such a notice is the bringing of an action within the meaning of the statute, after which such declarations are declared inadmissible. The presumption, however, is plain that it was the legislative purpose that this language should have its ordinary meaning as used in our laws, and the words " commencement of the action " refer to the date when proceedings are instituted by a writ or other legal process issuing from the clerk's office. *Ford* v. *Phillips,* 1 Pick. 202. *Gardner* v. *Webber,* 17 Pick. 407, 412. *Commonwealth* v. *Casey,* 12 Allen, 214, 217.

While a preliminary finding of the good faith of the declarant by the court is required before such declarations can be received, this judicial action is to be inferred from the admission of the evidence itself where the exceptions fail to state that the inquiry was not made. *Dixon* v. *New England Railroad,* 179 Mass. 242, 246. These declarations therefore were within the statute, and properly admitted in evidence. *Brooks* v. *Holden,* 175 Mass. 137.

By an ordinance duly enacted the city had established a lamp

department, that included the lamps and other property used in its system of street lighting, the management of which was entrusted to an officer therein designated as a superintendent of lamps. The defendant now ·insists that he was a public officer for whose negligence it was not responsible. It relies in support of this position upon the St. of 1825, c. 3, permitting the city to set up and maintain lamps in its streets, so far as might be convenient and necessary for the purpose of lighting them, "and to make all necessary contracts, rules, orders, and regulations respecting said lamps."

Under the Prov. St. 1773–74, c. 12, 5 Prov. Laws, (State ed.) 301, confirmed by St. 1796, c. 69, enacted when Boston was a town, and the St. 1825, c. 3, passed after it became a city, the defendant was authorized, but not required, to maintain lamps to light its streets, and to enact proper ordinances providing for the punishment of those "breaking or otherwise damaging the same."

No general statutory duty is imposed upon cities and towns requiring them to light their streets for any purpose. See Pub. Sts. c. 203, § 76. But when they are lighted at the expense of the municipality, authority to tax for such an expenditure must be given by statute. *Minot* v. *West Roxbury*, 112 Mass. 1. *Coolidge* v. *Brookline*, 114 Mass. 592, 594.

It has been said that the probable reason for the passage of these special laws was the limitation on the taxing power of the defendant, as without them neither the town nor the city could have established and maintained lawfully a system of artificial lighting of its streets to be paid for out of the public revenue. *Spaulding* v. *Peabody*, 153 Mass. 129, 131, 132.

In suits for damages caused by defects in streets which at night may become dangerous to travellers because they are dark and unlighted it uniformly has been held that as a city or town is under no statutory requirement to light them an omission to do so does not constitute negligence. *Sparhawk* v. *Salem*, 1 Allen, 30, 32. *Randall* v. *Eastern Railroad*, 106 Mass. 276. *Lyon* v. *Cambridge*, 136 Mass. 419. *Spillane* v. *Fitchburg*, 177 Mass. 87, 88.

But if, under no obligation imposed by statute, the defendant undertook this service for the general convenience of its citizens and travellers within its borders, it also by so doing derived an

incidental benefit by the protection thus afforded of decreasing the probability of actions against it for defective public ways, under R. L. c. 51, §§ 1, 18. An unlighted public way indeed may be dangerous when used at night, though not thereby rendered defective. If, however, it is out of repair, and this condition has been undiscovered, or if discovered not remedied, the probability that travellers using it would be less likely to be injured when lighted than if unlighted, is apparent and appreciable.

It was unnecessary for the plaintiff to show that any direct commercial profit had been derived. The indirect benefit thus conferred supplied a sufficient motive for the defendant's action. Having voluntarily undertaken the enterprise for its private benefit, and not acting in the performance of any public duty, it is liable for negligence in the management of its corporate property when used for such purpose. *Perry* v. *Worcester*, 6 Gray, 544. *Bigelow* v. *Randolph*, 14 Gray, 541, 543. *Hawks* v. *Charlemont*, 107 Mass. 414. *Sullivan* v. *Holyoke*, 135 Mass. 273. *Tindley* v. *Salem*, 137 Mass. 171. *Waldron* v. *Haverhill*, 143 Mass. 582. *Doherty* v. *Braintree*, 148 Mass. 495. *Coan* v. *Marlborough*, 164 Mass. 206, 208. *Collins* v. *Greenfield*, 172 Mass. 78. *Butman* v. *Newton*, 179 Mass. 1.

By the ordinance the superintendent of lamps among other duties was required at the expense of the city to keep and maintain "all lamp posts" in good repair. It was through his negligence that the lamp post that fell was allowed to fall into decay.

That the city could act as well by ordinance in the creation and appointment of agents charged with duties to be performed in its behalf as by a direct vote of the city council is settled. *Jensen* v. *Waltham*, 166 Mass. 344, 346. *Butman* v. *Newton*, *ubi supra*.

But as we have said the defendant was under no municipal duty to establish and maintain street lights, which were classified by its ordinance as a lamp department.

It follows that the superintendent of this department, whether elected by the city council or appointed by the mayor, does not belong to that class of public officers, of which highway surveyors afford a familiar illustration, for whose official acts cities and

towns are not held liable; for he is not charged with the performance of duties prescribed by any statute, where he would act independently, but he acts, if at all, under the ordinance as a municipal agent of the defendant. *Walcott* v. *Swampscott,* 1 Allen, 101. *Hawks* v. *Charlemont,* 107 Mass. 414. *Sullivan* v. *Holyoke,* 135 Mass. 273. *Deane* v. *Randolph,* 132 Mass. 475. *Waldron* v. *Haverhill,* 143 Mass. 582. *Butman* v. *Newton,* 179 Mass. 1.

. Being thus under the immediate direction and control of the city, it had full authority to direct the manner in which his department should be conducted. If the defendant lighted its streets as a matter of convenience and safety for those having occasion to use them at night without being required by law to undertake the performance of such a duty, the superintendent of lamps for this purpose became its servant, for whose negligent conduct in their maintenance it was responsible.

A majority of the court is of opinion that the order must be,
*Exceptions overruled.*

The case was argued at the bar in January, 1905, before *Knowlton,* C. J., *Morton, Lathrop, Loring,* & *Braley,* JJ., and afterwards was submitted on briefs to all the justices.

*S. M. Child,* for the defendant.

*E. R. Anderson, (A. T. Smith* with him,) for the plaintiff.