ERNEST E. GRAFFAM *vs.* TOWN OF POLAND.

Androscoggin.    Opinion November 9, 1916.

*Fellow-servant doctrine. Road commissioner acting in the capacity of a public officer. Rule as to liability of town when · its road commis-. sioner, without interference or special direction, was building a piece of roadway and a person is injured by his negligence.*

While the plaintiff was working as a laborer in the construction of a section of State aid highway in the defendant town, September 4, 1914, he was hit and severely injured by flying pieces of rock caused by the blasting of a boulder in the highway. This action is to recover damages for his injuries. After the evidence of liability was offered a non-suit was directed, and the case comes up on exceptions to that ruling.

The section of State aid highway where the accident occurred was being rebuilt or improved under the provisions of chapter 130 of the Public Laws of 1913, and one Forest O. Emery, who was then the road commissioner of the defendant town, had immediate charge of the work. The plaintiff contended at the trial that the work of constructing the highway was being carried on by the defendant town and that Mr. Emery was its representative and agent. for whose negligence in prosecuting the work the town is liable. And he offered proof to show that the accident was caused by Mr. Emery's negligence in exploding the blast without having it properly covered, and without any notice or warning to him that the blast was to be made.

*Held;*

1. It is clear from the evidence that Mr. Emery was not constructing this section of highway in his capacity as road commissioner of the defendant town.

2. But if he had been constructing the way in that capacity without any interference or special direction by the town, he would then have been acting as a public officer, and while so acting he would not have been in legal contemplation the servant or agent of the town, and the town would not be liable for his wrongful or negligent acts, though done in the course and within the scope of his employment.

3. The evidence is not sufficient to establish that the defendant town itself was carrying on the work of constructing this section of State aid highway and that Mr. Emery was its servant and agent in prosecuting the work. On the other hand, the evidence is plenary that the State Highway Commission had full charge and control of the work from its commencement. to its end.

4. If, however, it could have been established that Mr. Emery had charge of the work as the defendant's agent, even then the plaintiff's action could not be maintained, inasmuch as it clearly appears that Mr. Emery was a fellow servant of the plaintiff in doing the alleged negligent acts which caused the plaintiff's injuries.

Action on the case to recover damages for personal injuries. Defendant pleaded general issue. After the evidence on the question of liability was offered, court directed a nonsuit; to which ruling plaintiff filed exceptions. Exceptions overruled.

Case stated in opinion.

*William A. Connellan, and Robert J. Curran,* for plaintiff.

*John A. Morrill,* for defendant.

SITTING: CORNISH, KING, BIRD, HANSON, PHILBROOK, MADIGAN, JJ.

KING, J. While the plaintiff was working as a laborer in the construction of a section of State aid highway, in the defendant town, September 4, 1914, he was hit and severely injured by flying pieces of rock caused by the blasting of a boulder in the highway. This action is to recover damages for his injuries. After the evidence of liability was offered a nonsuit was directed, and the case comes up on exceptions to that ruling.

The section of State aid highway where the accident occurred was being rebuilt or improved under the provisions of chapter 130 of the Public Laws of 1913, and one Forest O. Emery, who was then the road commissioner of the defendant town, had immediate charge of the work. The plaintiff contended at the trial that the work of constructing the highway was being carried on by the defendant town and that Mr. Emery was its representative and agent for whose negligence in prosecuting the work the town is liable. And he offered proof to show that the accident was caused by Mr. Emery's negligence in exploding the blast without having it properly covered, and without any notice or warning to him that the blast was to be made. On the other hand, the defendant denied that it was carrying on the work and contended that the work was being done by the State Highway Commission.

By c. 130, Public Laws of 1913, a State Highway Commission was established, and provision was made for the building and permanent improvement of State and State aid highways. So far as material to the determination of the questions involved in this case, the provisions of that act may be thus briefly referred to. If any town desires State aid for the improvement of its State aid highways it may raise and appropriate, in addition to the amounts regularly raised and appropriated for the care of ways, highways and bridges, a sum not exceeding an amount fixed by the act on the basis of the valuation of the town. The municipal officers of such town are to file with the commission suggestions for the improvement during the next calendar year of its State aid highways, setting forth the location thereof and the improvements desired. The commission is to report back to the municipal officers, on or before the 20th day of February following, its recommendations in respect to the work suggested, and that report is to be submitted to the voters of the town at its next regular meeting, with a proper article in the warrant for the meeting, under which the voters are to vote "yes" or "no" on the question of the appropriation of the necessary money to secure the State aid. If the town makes an appropriation for the purpose, the commission is to be forthwith notified thereof, and if it approves the action of the town, in whole or in part, it then apportions to that town for that State aid highway improvement a sum fixed by the act and the money appropriated by the town for the purpose with the amount apportioned by the commission "shall constitute a joint fund" for the improvement of that State aid highway. The act provides that the town's share of the joint fund shall be paid forthwith to the State treasurer on requisition of the commission as the work progresses. The commission has full power in the letting of all contracts for the construction of all State aid highways except as otherwise provided, and shall make all surveys, plans, estimates, specifications and contracts for all proposed work, and shall, except as otherwise provided, advertise for bids for the same, with the right to reject any and all bids. It is also provided that the commission after making surveys, plans and estimates for proposed construction of State aid highways, may, when deemed by it advisable, make contracts with such town according to such

survey and specifications and upon terms satisfactory and under control of the commission without advertising said contracts for bids.

The municipal officers of the defendant town on December 22, 1913, filed with the State Highway Commission on a blank furnished by the commission for the purpose, suggestions for the improvement of a section of the State aid highway therein. The blank as filled out and filed contained the following: "Whom do you recommend as competent to take charge of the work? F. O. Emery. His post office address is West Poland." February 5, 1914, the commission reported to the town its recommendations concerning the matter, describing the section of highway which it designated for improvement. And at its annual meeting of March 9, 1914, the defendant town "Voted to raise and appropriate the sum of $666.00 for the improvement of the section of State aid road as outlined in the report of the State Highway Commission, in addition to the amounts regularly raised for the care of ways, highways and bridges." It is admitted that the town took no other action in its corporate capacity touching the matter.

The State Highway Commission caused the section of highway to be surveyed and laid out by its engineer, Mr. Buzzell, and plans and specifications to be made for the proposed improvements. Mr. Emery testified that he "was called on by Mr. Buzzell to come on to that piece of road and see it laid out." The plaintiff introduced the following paper.

## STATE OF MAINE.
### STATE HIGHWAY COMMISSION,
### ESTIMATE OF QUANTITIES.
### STATE AID ROAD.

*To Municipal Officers:*

Town of Poland,

Improvements to consist of the following items: All work is to be done in a manner to conform to instructions, specifications, plans and profile. E. C. Buzzell, Fryeburg, Maine, will represent the State highway department in directing the manner of carrying on the construction work.

(Here follows detailed specifications of the work.)

Notify this office and inspector one week before starting work on what day you propose to begin. Joint Fund $1,278.72. Work in charge of F. O. Emery, W. Poland.

Inclosures

STATE HIGHWAY COMMISSION,

P. L. HARDISON

*Asst. Engineer in charge of State Aid.*

Referring to that paper Mr. Emery, the plaintiff's witness testified: "That is the paper that they sent me before commencing my work on the State road." "Who sent it to you? A. It came from the State. Q. From the State Highway Commission? A. Yes."

Mr. Emery employed the men and teams to do the work and had the immediate charge of them, receiving his orders as to the manner of doing the work from Mr. Buzzell who inspected it as it progressed. On September 19, 1914, Mr. Emery sent his first report of the cost of the work to the State Highway Commission and thereafter he made weekly reports to it of his pay-roll and other expenditures. Each month the municipal officers of the defendant town furnished Mr. Emery the necessary funds to pay the expenses incurred including his own wages. After the work was completed the State treasurer sent the defendant a check for the amount appropriated by the State for the work, less the State's expense for plans, engineering, and inspection.

It is clear that Mr. Emery was not constructing this section of highway in his capacity as road commissioner of the defendant town. The work was being done under the instructions of the State Highway Commission and in accordance with plans and specifications furnished by it. That commission determined what improvements should be made and the manner of making them. But if Mr. Emery had been constructing the way in his capacity as road commissioner, without any interference or special direction by the town, he would then have been acting in the capacity of a public officer, and while so acting he would not have been in legal contemplation the servant or agent of the town, and the town would not be liable for his wrongful or negligent acts, though done

in the course and within the scope of his employment. *Small* v. *Danville,* 51 Maine, 359; *Goddard* v. *Harpswell,* 84 Maine, 499; *Bryant* v. *Westbrook,* 86 Maine, 450; *Bowden* v. *Rockland,* 96 Maine, 129.

But the plaintiff contends that the defendant town itself was carrying on the work of constructing this section of State aid highway and that Mr. Emery was its servant and agent in prosecuting the work. We do not think the proof sustains that contention. The extent of the evidence so far as it shows that the town took any part in the enterprise of improving the highway, is this: The municipal officers filed with the State Highway Commission suggestions for the improvement of a section of State aid highway in the defendant town under the provisions of the statute of 1913, and, in answer to an inquiry by the commission, they recommended Mr. Emery as a competent person to take charge of the work; the town voted an appropriation of $666 for the work as outlined in the report of the commission submitted to it; Mr. Emery was foreman of the construction, called to it by the commission, by whose instructions and directions he was governed in prosecuting the work; and the municipal officers, in the first instance, issued orders to Mr. Emery on the town treasurer for the necessary funds to pay for the work as it progressed, a final settlement of the joint fund being made between the State and the town after the work was completed.

It must be apparent that this is not enough to show that the defendant town had itself assumed the control and direction of the work of improving the way. It passed no vote to that effect, and appointed no servants or agents to act for it in respect to that work. On the other hand the evidence is plenary that the State Highway Commission had full charge and control of the work from its commencement to its end.

In no view of the evidence in this case can it be brought within the principle of *Woodcock* v. *Calais,* 68 Maine, 244, and similar cases, where the town in town meeting specifically voted to assume charge of certain work and to direct what should be done and the manner of doing it. Here the town took no corporate action other than to appropriate its share of the joint fund for the work.

It is therefore the conclusion of the court that the evidence in this case fails to show that Mr. Emery was acting as the servant or agent of the town in doing what he did in the work of constructing the highway.

But there is another insuperable objection to the maintenance of the plaintiff's action even if it could have been established that Mr. Emery had charge of the work as the defendant's agent and servant.

"The test which determines the master's liability for the negligence of one employee whereby injury is caused to another, is the nature of the duty that is being performed by the negligent servant at the time of the injury, and not the comparative grades of the two servants." *Small* v. *Mfg. Co.,* 94 Maine, 551; *Gallant* v. *Great North. Paper Co.,* 114 Maine, 208, 212.

To show the alleged negligence on which his action is based, the plaintiff offered evidence that Mr. Emery assisted in drilling a hole in the boulder, and that he personally inserted therein and exploded the charge of dynamite thereby producing the blast without properly covering the boulder so as to prevent portions of the exploded rock flying through the air. In doing those alleged negligent acts Mr. Emery was the fellow servant of the plaintiff. And it is the settled law in this State that an employer is not liable to an employee for an injury resulting to him through the negligence of a fellow-servant. *Gallant* v. *Great Northern Paper Co.,* supra, and cases cited.

*Exceptions overruled.*